# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MARILYN LOUISE VERHASSELT,**

                **Plaintiff,**

     v.                                                 Case No. 17-CV-1194

**NANCY A. BERRYHILL,**

                **Defendant.**

---

## DECISION AND ORDER

---

### Background

Marilyn Louise Verhasselt alleges she has been disabled since August 29, 2010. (Tr. 16.) She was last insured on December 31, 2013. (Tr. 16.) Following a hearing before an administrative law judge (ALJ), the ALJ on May 19, 2016, concluded that Verhasselt had not engaged in substantial gainful activity since her alleged onset date and that she suffers from the following severe impairment: "osteoarthritis of the bilateral hands, status post bilateral carpometacarpal (CMC) joint arthroplasty." (Tr. 18.) The ALJ concluded that Verhasselt's anxiety was not a severe impairment. (Tr. 19.)

The ALJ found that Verhasselt's impairments did not meet or medically equal a listing under in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19.) The ALJ concluded

that, between August 29, 2010 and August 29, 2015, Verhasselt had the residual functional capacity (RFC) to perform light work "except she is limited to occasional handling and fingering with her bilateral upper extremities." (Tr. 20.) A vocational expert testified that, with these limitations, Verhasselt would be capable of performing various jobs, including hostess, rental clerk, counter clerk, or machine tender. (Tr. 23.)

However, the ALJ concluded that Verhasselt became disabled on August 29, 2015, her 55th birthday, when she transitioned from the "individual closely approaching advanced age" to the "advanced age" category under the Medical-Vocational Guidelines, 20 C.F.R Part 404, Subpart P, Appendix 2. (Tr. 16-17, 22); *see also* Medical-Vocational Rule 202.04.

Although she was previously represented by counsel, Verhasselt is now representing herself. In her filings with the court she expresses frustration at the ALJ's decision and argues that it is unfair that she is not able to recover under SSDI when she has been found disabled, worked for years, and was forced to quit her job because of her impairments, which started years before the date on which the ALJ found that she became disabled. (ECF Nos. 16, 20.) She also argues, without providing specifics, that the ALJ "overlooked my medical reports and took things I said out of context." (ECF No. 16 at 1.) She argues she was limited to sedentary work before her date last insured and therefore is disabled. (ECF No. 16 at 2.)

2

**Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether or not the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial evidence. *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

It is not the Court's role to reweigh evidence or substitute its judgment for that of the ALJ. *Moore*, 743 F.3d at 1121. Rather, the court must determine whether the ALJ complied with his obligation to build an "accurate and logical bridge" between the evidence and his conclusion that is sufficient to enable a court to review the administrative findings. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). If the ALJ committed a material error of law the court cannot affirm the ALJ's decision regardless of whether it is supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

Although Verhasselt is representing herself, she must direct the court to specific points she believes the ALJ got wrong. "A generalized assertion of error is not sufficient

to challenge an adverse ruling, and undeveloped or unsupported contentions are waived." *Cadenhead v. Astrue*, 410 Fed. Appx. 982, 984 (7th Cir. 2011) (citations omitted).

## Analysis

Verhasselt's criticisms of the ALJ's decision are generally insufficiently specific and outside the scope of this court's review. Therefore, the court focuses on one specific error Verhasselt alleges—that she was actually limited to sedentary work. If Verhasselt was limited to sedentary work when she was "closely approaching advanced age," i.e., 50 to 54 years old, she would be disabled based upon her education and previous work experience. *See* Medical-Vocational Rule 201.12; *see also* SSR 96-09p.

There is no dispute that Verhasselt was unlimited in her ability to sit, stand, or walk. Therefore, the dispute over whether Verhasselt was capable of light work comes down to whether Verhasselt was capable of the lifting demands of light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

In support of his conclusion that Verhasselt was capable of the lifting demands of light work, the ALJ pointed to a December 2009 letter (or perhaps more accurately described as a file memorandum) of Dr. David A. Toivonen (Tr. 434), the surgeon who performed the January 2009 and May 2009 surgeries on Verhasselt's hands. (Tr. 20-21.)

4

Dr. Toivonen had ordered a functional capacity evaluation by an occupational therapist, who concluded, in the ALJ's words, that Verhasselt "qualified for light to medium duty work, with a recommendation for safe lifting up to 24 pounds occasionally and 12 pounds frequently." (Tr. 21.) After reviewing the functional capacity exam, Dr. Toivonen stated that the exam placed Verhasselt "at light medium duty work, working in essentially less than 20 lb. weight lifting class. I think that is a reasonable level of function for her." (Tr. 434.)

However, the ALJ noted that in July 2013, after examining Verhasselt, physiatrist Dr. Elizabeth Benson stated that Verhasselt "could occasionally lift 10 pounds; frequently lift less than 10 pounds; and occasionally reach, handle, finger, and feel." (Tr. 21.) The ALJ afforded Dr. Benson's opinion "some weight." (Tr. 21.) He stated, "While Dr. Benson did personally examine the claimant, her opinion was based on a one-time examination. In contrast, Dr. Toivonen's opinion was supported by his ongoing treating relationship with the claimant and the functional capacity evaluation, which involved a more thorough testing of the claimant's abilities." (Tr. 21.)

The ALJ further noted that Verhasselt "did not seek any further treatment for hand pain" between December 2009 and October 2012. (Tr. 21.) Although she "testified that her pain has worsened since she treated with Dr. Toivonen [she] offered no explanation for her lack of treatment, which indicates her pain may not have been as severe as alleged." (Tr. 21.)

5

An ALJ can generally rely on treatment history when assessing the severity of symptoms, *see* SSR 16-3p, 1. d. "But an administrative law judge is not allowed to infer from an applicant's failure to have sought medical care that [s]he's a malingerer without asking [her] why [s]he didn't seek care—and specifically whether [s]he had health insurance." *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013). At the 2016 hearing the ALJ asked Verhasselt if she had health insurance and why she did not seek further treatment. (Tr. 35.) Verhasselt responded, "Because they always tell me there's nothing they can do for it so, and I don't have the money to keep going to doctors to hear the same outcome." (Tr. 35.)

It is thus not correct to say that Verhasselt "offered no explanation for her lack of treatment." Perhaps the ALJ did not consider her explanation to refer to the time period between December 2009 and October 2012 because he did not intend his question that prompted her explanation to cover that period. The context of the ALJ's questions is such that they could be understood as referring only to the two-year period prior to the date of the second hearing—that is, between 2014 and 2016. The period between 2104 and 2016 was significant because there had been a prior administrative hearing in 2014, but the resulting unfavorable decision (Tr. 114-25) was reversed by the Appeals Council and a new hearing ordered (Tr. 126-29).

If the ALJ's questions, and thus Verhasselt's answers, were limited to the two year period before the hearing, then the ALJ was correct when he said that Verhasselt

6

"offered no explanation for her lack of treatment" between December 2009 and October 2012. But if that is the case, then she only offered no explanation because the ALJ never asked her for an explanation. Missing from the 2014 hearing is any similar inquiry into why Verhasselt did not pursue treatment, much less an inquiry regarding the period specifically between December 2009 and October 2012.

Thus, the ALJ erred either by failing to inquire, in contravention of *Garcia,* or by overlooking, without explanation, Verhasselt's credible explanation for the absence of treatment between December 2009 and October 2012. Consequently, remand is required.

In addition, there was evidence that Verhasselt's condition had deteriorated since 2009. (Tr. 35, 57-58.) As quoted above, the ALJ acknowledged Verhasselt's testimony that her pain worsened, but he then suggested that her testimony was inconsistent with her not seeking treatment. To the extent the ALJ was relying on the absence of treatment as a basis for rejecting Verhasselt's testimony that her condition had deteriorated, this conclusion is undermined by the ALJ's failure to inquire why Verhasselt did not seek treatment, as discussed above.

If Verhasselt's condition deteriorated over time, as Verhasselt repeatedly testified it had (Tr. 35, 57-58), Dr. Benson's 2013 opinion that Verhasselt was limited to occasionally lifting 10 pounds and frequently lifting less than 10 pounds was not necessarily inconsistent with Dr. Toivonen's 2009 opinion that Verhasselt was capable of

"light medium duty work, working in essentially less than 20 lb. weight lifting class." Both opinions could have been accurate conclusions as to Verhasselt's abilities at the time of each of those opinions. Significantly, Dr. Toivonen's 2009 opinion predated Verhasselt's alleged onset date by more than eight months, a point the ALJ never discussed in his analysis.

Evidence that Verhasselt's condition deteriorated (in the form of Verhasselt's testimony and Dr. Benson's opinion), coupled with the fact that Dr. Toivonen's opinion reflected Verhasselt's condition before her alleged onset date, was material evidence that did not support the ALJ's conclusion. Consequently, the ALJ erred by failing to discuss it. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

Moreover, the court concludes that the ALJ failed to adequately explain why, in light of evidence of Verhasselt's deteriorating condition, he accepted the RFC reflected in a report that predated Verhasselt's alleged onset date over the opinion of a treating source regarding Verhasselt's RFC during the relevant period. Standing alone, the fact that Dr. Toivonen had a more substantial treating relationship with Verhasselt than did Dr. Benson was an insufficient explanation given that Dr. Benson, as a physiatrist, had comparable expertise on the relevant question and given that Dr. Toivonen's opinion did not reflect Verhasselt's condition during the relevant period. This error was not harmless because Dr. Benson's report was consistent with limitations of sedentary

work. Therefore, if credited, Verhasselt would have been disabled prior to her date last insured. Remand is necessary on this basis as well.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, this matter is **remanded** for further proceedings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 4th day of June, 2018.

WILLIAM E. DUFFIN
U.S. Magistrate Judge